# EXHIBIT "1"

*In the Matter of Arbitration between*

INTERNATIONAL UNION OF
OPERATING ENGINEERS
LOCAL 351

*and*

PHILLIPS 66
BORGER REFINERY

FMCS Case No. 180531-05203
Vacation Policy
Borger, Texas

*Before the Arbitrator,* **Raymond L. Britton, Jr.**

APPEARANCES

Margret E. Lecocke, Esq., Representative *for the Union*
Jonathan G. Rector, Esq., Micah S. Heilbrun, Esq., Representatives *for the Company*

ISSUE

    Did the 2018 change to the Phillips 66 Vacation Policy eliminate employees' entitlement to vacation earned in previous years in violation of the collective bargaining agreement, and if so, what is the appropriate remedy?

HISTORY OF THE PROCEEDINGS

    The parties failed to reach agreement on this matter, and it was submitted to arbitration for resolution. The undersigned was notified by the Federal Mediation and Conciliation Service ("FMCS"), of his selection by the parties as Arbitrator to hear and decide the matter in dispute.

    The date for the hearing of this matter was set for Thursday, June 20, 2019, and the hearing was held on that date at the Borger Bank Bldg., Adobe Walls Room, 3rd Floor, 301 W. 6th Street, Borger, Texas 79007, commencing at 9:00 o'clock a.m.

    At the commencement of the hearing, it was stipulated by the parties that this matter was properly before the Arbitrator for decision and that all steps of the arbitration procedure had been followed and the Arbitrator had the authority to render the decision in this matter.

    The parties agreed to submit Post-Hearing briefs on or before August 16, 2019 to the Arbitrator. Both the Post-Hearing briefs filed by the International Union of Operating Engineers, Local 351 (hereinafter referred to as the "Union") and that filed by the Phillips 66 Company (hereinafter referred to as the "Company") were received by the Arbitrator on August 16, 2019.

SUMMARY STATEMENT OF THE CASE

The Company and the Union are parties to a Working Agreement between Phillips 66 Borger Refinery (Operating, Maintenance, and Clerical) and Local No. 351 International Union of Operating Engineers, AFL-CIO effective for the period from May 1, 2016 through April 30, 2021, (hereinafter referred to as the "Collective Bargaining Agreement" or "Working Agreement"). (Joint Exhibit No. 1)

On January 5, 2018, the Union filed its Grievance No. 01-18, which stated in relevant part as follows: (Joint Exhibit No. 2)

* * *

*Employee(s): Jeff Buttermore et al*

* * *

*Nature of Grievance:* <u>Article VIII Security Plans and Benefits Number 2. Employees who earned vacation in previous year(s) not compensated.</u>

*Request for Adjustment:* <u>Compensate all employees for any vacation time earned in the previous year(s) prior to changes in vacation policy.</u>

* * *

On January 18, 2018, in a letter from Dawn Clendening, Labor Relations Lead, the Company denied the Grievance at the First (1st) Step and stated in relevant part as follows: (Joint Exhibit No. 2)

* * *

*This will acknowledge receipt of your grievance which was received on January 5, 2018 and states, "Article VIII Security Plans and Benefits Number 2. Employees who earned vacation in previous year(s) not compensated."*

*The Company has awarded employees their full vacation allotment on January 1 of each year and new hires were awarded a prorated vacation allotment since 2006. The Company made a change to its Vacation Policy effective January 1, 2018. Under the revised plan vacation will be earned at a rate of 10% on the last day of each completed month of service up to the vacation annual total allotment.*

*The Union contends that employees should be compensated for vacation earned in the previous year. Employees have not "earned" vacation in the previous year. The vacation allotment for 2017 was awarded on January 1 of 2017 for all employees that were employed on that date.*

*Article VIII which defines the application of benefits and policies to bargaining unit employees specifies that, "The conditions, rules, and regulations of such plans as may be established by the Company shall determine all questions arising thereunder." Under these provisions of the Working Agreement, as well as others, the Company has reserved the right to modify Company policies.*

*Since no violation of the Working Agreement has been demonstrated, your grievance must be denied.*

* * *

On February 13, 2018, the Company in its letter from Ellen Fulton, responded to the second step of the grievance process that was heard on January 30, 2018, and denied the Grievance stating in relevant part as follows: (Joint Exhibit No. 2)

* * *

*The Company made a change to its Vacation Policy effective January 1, 2018. Under the revised plan the current year's annual vacation total will be earned at a rate of 10% on the last day of each completed month of service up to the annual vacation total. Prior to 2018 employees were awarded their full vacation allotment on January 1 of each*

year and new hires were awarded a prorated vacation allotment in their year of hire. This system, which was in effect back to 2006, did not require employees to earn their vacation the previous year.

Some longer service employees remember a time prior to 2006 when there was a waiting period before being allowed to participate in the vacation benefit. At that time, you had to have one year service before being eligible for two weeks of vacation. When the vacation was awarded it had to be taken within that current year (or carried over to the following year after the carryover provision was put in place.) For example, if you began on January 15, 2003 you were awarded 2 weeks vacation on January 15, 2004 and those two weeks had to be taken during 2004. Then, you were awarded vacation again on January 1, 2005 which was current year vacation for that year (2005). An employee starting their employment on October 15, 2003 would be awarded vacation on October 15, 2004 which had to be taken before year end. They were then awarded their current year vacation allotment on January 1, 2005. This demonstrates that on January 1 of the year after their first anniversary an employee was being awarded current year vacation. There was no earned or accrued vacation.

Article VIII which defines the application of benefits and policies to bargaining unit employees specifies that, "The conditions, rules, and regulations of such plans as may be established by the Company shall determine all questions arising thereunder." Under these provisions of the Working Agreement, as well as others, the Company has reserved the right to modify Company policies.

Since no violation of the Working Agreement has been demonstrated, your grievance must be denied.

\* \* \*

By the Company's letter dated, May 14, 2018, from Duncan Crosbie, the Grievance was denied at the Third Step and stated in relevant part as follows: (Joint Exhibit No. 2)

\* \* \*

The Company made a change to its Vacation Policy effective January 1, 2018. Under the revised plan the current year's annual vacation total will be earned at a rate of 10% on the last day of each completed month of service up to the annual vacation total. Prior to 2018 employees were awarded their full vacation allotment on January 1 of each year and new hires were awarded a prorated vacation allotment in their year of hire. This system, which was in effect back to 2006, did not require employees to earn their vacation the previous year.

Some longer service employees remember a time prior to 2006 when there was a waiting period before being allowed to participate in the vacation benefit. At that time, employees had to complete one year of service before being eligible for two weeks of vacation. Even under that process, an employee was being awarded current year vacation on their first anniversary. There was no earned or accrued vacation, it was simply awarded after the wait period.

Article VIII which defines the application of benefits and policies to bargaining unit employees specifies that, "The conditions, rules, and regulations of such plans as may be established by the Company shall determine all questions arising thereunder." Under these provisions of the Working Agreement, as well as others, the Company has reserved the right to modify Company policies.

Since no violation of the Working Agreement has been demonstrated, your grievance must be denied.

\* \* \*

Provisions of the Working Agreement made and entered between the Company and the Union considered relevant to this dispute is as follows: (Joint Exhibit No. 1)

THIS AGREEMENT, made and entered into this 1st day of May 2016, by and between Phillips 66 at its Borger Refinery, having operations in the Texas Panhandle Area, ("Company"), and Local 351, International Union of Operating Engineers, AFL-CIO, of Borger, Texas, ("Union").

This contract is the exclusive Agreement between Phillips 66, Borger Refinery and the International Union of Operating Engineers, Local 351. No practices, payments of wages or benefits prior to or subsequent to this Agreement date shall act to change or enlarge the express wording f this Agreement. . . . .

\* \* \*

## ARTICLE IV
### Compensation

* * *

4. 12 Hour Shift Procedures
H. **RULES RELEVANT TO THE 12-HOUR SCHEDULE:**

(12)   Vacation Pay- Vacation is paid at the Base Wage Rate. Under the twelve hour shift, vacation time is referred to in terms of hours. Company vacation policy dictates vacation allotment. The current policy translates into the following allotment for the 12 hour schedule:

| Years of Service | Weeks | Days | Off | Hours |
|---|---|---|---|---|
| 1-4 Years | 2 | 7 | 84 | 84 |
| 5-9 Years | 3 | 10.5 | 126 | 126 |
| 10-19 Years | 4 | 14 | 168 | 168 |
| 20-29 Years | 5 | 17.5 | 210 | 210 |
| 30 Years | 6 | 21 | 252 | 252 |

Employees with 5-9 or 20-29 years will receive 6 hours of pay in lieu of vacation at the base wage rate at the end of the year or may take 6 hours vacation plus 6 hours without pay for one day.

* * *

## ARTICLE VII
### Settlement of Complaints and Grievances

* * *

5.   . . . . . The arbitrator may interpret the existing provisions of this Agreement and apply them to the specific facts of the dispute presented to him, but he shall, however, have no authority to add to, or subtract from, or modify the terms of this Agreement. . . . .

* * *

## ARTICLE VIII
### Security Plans and Benefits

1. All benefits arranged by the Company for its team members generally, shall be available to team members covered by this Agreement. The term 'Benefits' includes, among others:

   A.   Vacations

* * *

2.   . . . . . The conditions, rules and regulations of such plans as may be established by the Company shall determine all quesions [sp] arising thereunder.

* * *

## ARTICLE XII
### Miscellaneous and General

* * *

16. **Management Functions**
The Union recognizes that managerial functions inherent in the conduct of business by an employer are retained by the Company subject to the terms of this agreement.

* * *

Provisions of the Company's 2018 Vacation Policy considered relevant to this dispute are as follows: (Company's Exhibit No. 1)

### VACATION POLICY
### - U.S.

Date Issued/Revised:
01/01/2018

\* \* \*

I. <u>Purpose</u>

The purpose of this U.S. Vacation Policy ("Policy") is to provide eligible employees time off with pay. Time off under this Policy may be taken for any reason, with supervisor approval.

\* \* \*

IV. <u>Earning Vacation</u>

Full-Time Employees

Full–time employees who are employed with Phillips 66 as of January 1 will earn 10% of the Annual Vacation Total per month until the Annual Vacation Total is met. The earned vacation will be awarded on the last day of the month. The Annual Vacation Total will be based upon the employee's years of service (or VED, as applicable) in accordance with the following schedule:

SCHEDULE A<br>Per Year

| Years of Service | Annual Vacation Total (Hours) | Annual Vacation Maximum (Hours) |
|---|---|---|
| 1-4 | 80 | 160 |
| 5-9 | 120 | 200 |
| 10-19 | 160 | 240 |
| 20-29 | 200 | 280 |
| 30 Years | 240 | 320 |

Full–time employees who commence employment with Phillips 66 after January 1 (including employees transferring from a different vacation policy or acquired as a result of corporate transactions) will begin earning an Annual Vacation Total on the first day of employment in the same manner as set forth above.

\* \* \*

VI. <u>Carryover</u>

With the exceptions of California employees and Heritage Conoco employees with Grandfathered Vacation, employees may carry over earned but unused vacation days to the subsequent calendar year, up to a maximum of 80 hours inclusive of any carryover from a previous year. The total of the employee's Annual Vacation Total and carryover cannot exceed the Annual Vacation Maximum in Schedule A for their years of service.

\* \* \*

Provisions of the Company's 2016 Vacation Policy considered germane to this dispute are as follows: (Joint Exhibit No. 9)

VACATION POLICY<br>- U.S.

Date Issued/Revised:
07/01/2016

\* \* \*

I. PURPOSE

The purpose of this U.S. Vacation Policy ("Policy") is to provide eligible employees time off with pay for rest and relaxation based on years of service.

\* \* \*

IV. VACATION – REGULAR EMPLOYEES

A. Vacation Schedule

Employees (with the exception of employees identified in Subsection C of this Section) will be awarded vacation on January 1 of each year, subject to the maximum vacation limit, and in accordance with the following schedule:

*SCHEDULE A*
*Per Year*

| Years of Service | Eligible Days of Vacation | Maximum Vacation Limit |
|---|---|---|
| 1-4 | 10 | 20 |
| 5-9 | 15 | 25 |
| 10-19 | 20 | 30 |
| 20-29 | 25 | 35 |
| 30+ | 30 | 40 |

B. Maximum Vacation Limit

Eligible employees are awarded and may carry over all unused vacation from year to year, up to the maximum vacation limits stated above. On January 1 of each calendar year, the employee will be awarded vacation in an amount up to the maximum vacation limit. Once an employee reaches the applicable maximum vacation limit, the employee is not awarded any additional vacation time for that calendar year. On January 1 of the following calendar year, the employee may be awarded additional vacation time to again reach the maximum vacation limit.

For example, John has 10 years of service. He exhausted all vacation available in 2008, and was awarded 20 days vacation on January 1, 2009. During 2009, John used 10 days of vacation. He carried over the remaining 10 days to 2010 and was awarded an additional 20 days on January 1, 2010 (at which time John had a total of 30 vacation days, the maximum number of vacation days that may be awarded based on the maximum vacation limit). In 2010, John only used 5 days of vacation. He carried over the remaining 25 days to 2011 and was awarded an additional 5 days on January 1, 2011 to again bring him to his maximum vacation limit of 30 days.

Provisions of the ConocoPhillips' 01/01/2003 (last updated 12/01/2005) U.S. Vacation Policy considered relevant to this dispute is as follows: (Union Exhibit No. 1)

ConocoPhillips
U.S. VACATION POLICY

\* \* \*

IV.   VACATION – REGULAR EMPLOYEES

A. Vacation Schedule

Employees with more than 1 year of continuous service will be awarded vacation on January 1 of each year, subject to the maximum vacation limit, and in accordance with the following schedule:

*SCHEDULE A*

| Years of Service | Eligible Days of Vacation | Maximum Vacation Limit |
|---|---|---|
| 1-4 | 10 | 20 |
| 5-9 | 15 | 25 |
| 10-19 | 20 | 30 |
| 20-29 | 25 | 35 |
| 30+ | 30 | 40 |

B. Maximum Vacation Limit

The maximum vacation limit (Schedule A, Column 3 set on January 1 of each year, is equal to the eligible days of vacation (Schedule A, Column 2), plus 10 days. Employees may carry over all unused vacation to the following year. However, any vacation time in excess of 10 days that is carried over, will result in a limit on the vacation award for the following year because of the maximum vacation limit.

For example, John E. has 10 years of service. He exhausted all vacation available in 2003, and was awarded 20 days vacation on January 1, 2004. During 2004, John used 10 days of vacation. He carried over the remaining 10 days to 2005 and was awarded an additional 20 days on January 1, 2005. In 2005, John only used 5 days of

vacation. He carried over the remaining 15 *[25]* days to 2006 and was awarded an additional 15 *[5]* days on January 1, 2006 to bring him to his maximum vacation limit of 30 days. *[correct number of days added]*

* * *

C. First Vacation

1. Regular Non-Store (includes exempt, non-exempt and hourly) Employees – New Hires with less than one year of continuous service.

 · Employees (excluding union employees unless collective bargaining agreement expressly provides participation in this Policy) hired in to regular full-time or regular part-time non-store, exempt, non-exempt and hourly jobs after completing 90 days' of continuous service will be awarded up to 10 days of vacation, based on the following schedule:

| Month of Hire | Percent of 10 full Vacation after 90 days' Service | Pro-rated Vacation Rounded Up to whole days |
|---|---|---|
| January | 100% | 10 |
| February | 100% | 10 |
| March | 100% | 10 |
| April | 75% | 8 |
| May | 75% | 8 |
| June | 75% | 8 |
| July | 50% | 5 |
| August | 50% | 5 |
| September | 50% | 5 |
| October | 0% | 0 |
| November | 0% | 0 |
| December | 0% | 0 |

* * *

XII.  PAY IN LIEU OF VACATION

A. Termination of Employment

 · An employee who ends employment prior to 12/31 and who has not taken all awarded and excess banked vacation shall receive a lump sum payment in lieu of such vacation not taken.

 · An employee, whose employment end date is 12/31, will receive a lump sum payment in lieu of all unused awarded and excess banked vacation for the current year, as well as the amount that would have been awarded in the following year, subject to the maximum vacation limit. . . . .

* * *

## POSITION OF THE PARTIES

### The Position of the Union

The Union takes the position that employees have "earned" their respective vacation(s) in the previous year as established by a long history of past practice at the Borger, Texas Refinery. Specifically herein, the Union contends that employees had "earned" vacation in the previous year of 2017 but were not awarded their full vacation allotment on January 1, 2018, and thus were not compensated. Accordingly, the Union contends that the Company has violated the Working Agreement and requests that the Company make all bargaining unit employees as of December 31, 2017 whole for their lost, vested vacation.

### The Position of the Company

It is the position of the Company that the employees have not "earned" vacation in the previous year. The Company contends that the vacation allotment for the year 2017 was awarded on January 1 of 2017 for all employees that were employed on that date. Moreover, the Company contends that it has the right under the

Working Agreement to modify the Company's polices, including vacation policies. Accordingly, the Company asserts that it has followed the terms of the Working Agreement and therefore, the Union's grievance should be denied.

## OPINION

Determinative of this matter is whether the Company's implementation of its new 2018 Vacation Policy was a violation of the Working Agreement pertaining to the vacation rights and benefits of the bargaining unit members at the Borger, Texas Refinery? It is the burden of the Union to show by a preponderance of the proof that an affirmative response to this question is justified. As previous arbitrators have recognized, "[e]mployees have no inherent right to vacations; rather, vacation rights arise out of the contract."[1]

In support of its position, the Company urges that Article VIII of the Working Agreement (Joint Exhibit No. 1) defines the application of benefits and policies to bargaining unit employees. The term "benefits" includes, among other things, "vacations". Further, Article VIII expressly states that "[t]he conditions, rules and regulations of such plans as may be established by the Company shall determine all quesions [sp] arising thereunder." The Company additionally urges that Article IV.4.(12) of the Working Agreement confirms that: "Company vacation policy dictates vacation allotment." Thus, the Company asserts that it has the unilateral right to modify the benefit plans and policies made available to the collective bargaining unit employees, including the Company's vacation policy and that the Union has waived its right to bargain over changes to these plans and policies in exchange for the Company allowing collective bargaining unit employees to participate in those plans and policies.

The Union however, does not contest the Company's right to make changes to the vacation policy. Notwithstanding, the Union does contest the Company's failure to compensate employees for their vested vacation on January 1, 2018. According to the Union, the Company instead of paying each employee out for his or her annual vested vacations, as earned in 2017 and not yet used in 2018, the Company skipped directly into its new 2018 accrual Vacation Policy (Company Exhibit No. 1), which caused the affected employees to lose their entire vested benefit. The Union further asserts that every employee on the payroll as of December 31, 2017 lost thousands of dollars.

As both parties are aware, the Union filed its Grievance No. 01-18 on January 5, 2018 in response to the Company implementing its new Vacation Policy issued/revised on January 1, 2018. According to the Company, this new Vacation Policy made one materially relevant change as follows: Previous vacation policies awarded all vacation for the "current" year on January 1, 2018 (commonly referred to as a "front-loaded" system for awarding vacation), the Company changed to an "accrual-based" system. Under this new system, an employee's vacation total would be awarded in monthly 10% increments on the last day of the month through October 31st of that year. The new 2018 Vacation Policy otherwise contained no changes to the amount of vacation an employee could carry over from year-to-year and further assured employees that they could use their entire vacation allotment at any time during the year, even if it had not been awarded. Nevertheless, according to the Company's 2018 Vacation FAQ ('Frequently Asked Questions") addressing the new 2018 Vacation Policy, an employee's "annual vacation total will no longer be awarded January 1 of each year". (Union Exhibit 2) Consequently, it seemingly appears that an employee is no longer entitled to receive a 100% pay out in lieu of vacation on January 1, and now must continue and be able to work through to October 31 in order to earn and receive a full 100 % payout, assuming the employee so elects to do so.

The record discloses that the Written Agreement between the parties was made and entered into on May 1, 2016 and remains in effect through April 30, 2021. The record further reveals that there have been two (2) previous Company vacation policies in effect during this contractual time period: Company's vacation policy issued/revised: 07/01/2015 (Joint Exhibit No. 8) and Company's vacation policy issued/revised: 07/01/2016 (Joint Exhibit No. 9), respectively.

---

[1] *See* Peterbilt Motors Co., 66 LA 160, 161 (Williams, 1976); S.C. Indus., 65 LA 747, 747 (Williams, 1975); Golay & Co., 59 LA 1245, 1247 (Volz, 1972); Dover Corp., 48 LA 965, 968 (Volz, 1966); Modecraft Co., 44 LA 1045, 1049 (Jaffee, 1965). Elkouri, How Arbitration Works, Ch. 17, Employee Rights and Remedies, 1. Vacations, 6th Ed.

In these two preexisting Company vacation policies, the Arbitrator notes that the language for the most part is very similar. Relevant to the matter herein, it is noted that both policies identify their purpose as follows: "[t]he purpose of this U.S. Vacation Policy . . . is to provide eligible employees time off with pay for rest and relaxation ***based on years of service***. (*emphasis added*) This same phrase, "based on years of service" is also found to exist in the Company's previous vacation policy issued/revised: 05/01/2012 (Joint Exhibit No. 7); along with ConocoPhillips' vacation policy last updated: 01/01/2012; ConocoPhillips' vacation policy last updated: 01/01/2009; and ConocoPhillips' vacation policy effective 01/01/2003. In contrast however, the Company's new 2018 vacation policy has clearly deleted the phrase, ***based on years of service*** (emphasis added), from its Purpose section.

Additionally, it is noted by the Arbitrator that the Phillips Petroleum Company's vacation policy (revised 01-01-90) (Joint Exhibit No. 3) states in order for an employee "[t]o be eligible for vacation during a calendar year, an employee must be actively employed and actually on the job . . . on December 31 . . . of the ***prior*** year. (*emphasis added*) Generally the employee must have completed one (1) or more years of continuous service."

In support of its position, the Union produced three (3) witnesses who testified at the hearing as follows:

Gary Schick, veteran Stillman for the Company since 1973, essentially testified that he had been awarded vacation that he had earned the previous year for the past forty (40) years.

Mark Spencer, Stillman for the Company since 2006, similarly echoed Mr. Schick's understanding of the vested vacation policy, and testified that he was awarded vacation the first day of the following year, based on his service the year before.

Ken Blewett, an employee who worked for the Company for 38 years and retired in 2015, reiterated both Mr. Schick's and Mr. Spencer's understanding of the vacation policy and testified that it was earned in the previous year.

The Union additionally offers support for its position that vacation was earned the previous year in the language of the Company's various past vacation policies (effective from 01/01/2003 through to 12/31/2017) which all stated as follows: "[s]ubsequent vacation will be based on Schedule A on January 1 of the next calendar year." (Joint Exhibits Nos. 5, 6, 7, 8 and 9)

However, the Company contends that as part of the negotiations over the 2016 Working Agreement (Joint Exhibit No. 1), a "zipper clause" was proposed and incorporated into the collective bargaining agreement which expressly stated as follows:

> "This contract is the exclusive Agreement between Phillips 66, Borger Refinery and the International Union of Operating Engineers, Local 351. No practices, payments of wages or benefits prior to or subsequent to this Agreement date shall act to change or enlarge the express wording f this Agreement."

Furthermore, the Company references section 4.H.(12) of Article IV of the Working Agreement as supportive of its position with the contract language which states: "Company vacation policy dictates vacation allotment."

In addition, the Company also references sections 1. and 2. of Article VIII to buttress its position which respectively state as follows: "[a]ll benefits [including "Vacations"] arranged by the Company for its team members generally, shall be available to team members covered by this Agreement. . . ."; and that "[t]he conditions, rules and regulations of such plans as may be established by the Company shall be determine all questions arising thereunder."

For the record, the Union does not contest the Company's right to modify the vacation policy. However, the Union does contest the purported deleterious effect the new 2018 Vacation Policy had on employees when the

Company made its change becoming effective January 1, 2018. More specifically, the Union contends that the new 2018 Vacation Policy did not pay out employees' vacation that they had earned in 2017.

In addressing the Company's new 2018 Vacation Policy, it states in relevant part as follows:

IV. <u>Earning Vacation</u>

Full-Time Employees

Full–time employees who are employed with Phillips 66 as of January 1 will earn 10% of the Annual Vacation Total per month until the Annual Vacation Total is met. The earned vacation will be awarded on the last day of the month. The Annual Vacation Total will be based upon the employee's years of service (or VED, as applicable) in accordance with the following schedule:

*SCHEDULE A*
*Per Year*

| Years of Service | Annual Vacation Total (Hours) | Annual Vacation Maximum (Hours) |
|---|---|---|
| 1-4 | 80 | 160 |
| 5-9 | 120 | 200 |
| 10-19 | 160 | 240 |
| 20-29 | 200 | 280 |
| 30 Years | 240 | 320 |

Full–time employees who commence employment with Phillips 66 after January 1 (including employees transferring from a different vacation policy or acquired as a result of corporate transactions) will begin earning an Annual Vacation Total on the first day of employment in the same manner as set forth above.

* * *

VI. <u>Carryover</u>

With the exceptions of California employees and Heritage Conoco employees with Grandfathered Vacation, employees may carry over earned but unused vacation days to the subsequent calendar year, up to a maximum of 80 hours inclusive of any carryover from a previous year. The total of the employee's Annual Vacation Total and carryover cannot exceed the Annual Vacation Maximum in Schedule A for their years of service.

* * *

In addition to the new 2018 Vacation Policy, the Company issued its 2018 Vacation Frequently Asked Questions ("FAQ") to help address questions that may arise therefrom as follows: (Union Exhibit No. 2)

Q: **What has changed with the Vacation Policy, effective Jan. 1, 2018?**
A: On Jan. 1, 2018, employees will earn 10 percent of their annual vacation total on the last day of each month, up to their annual vacation total for the calendar year. This means your annual vacation total will no longer be awarded Jan. 1 of each year. For example, employees hired prior to Jan. 1, 2018, who are continuously employed, will earn their annual vacation total for 2018 from January through October.

Retirement-eligible employees (age 55 with five years of service) will not be subject to the new Vacation Policy until Jan. 1, 2019.

Q: **I am retirement eligible. How am I impacted by this change?**
A: Retirement-eligible employees (age 55 with five years of service) will not be subject to the new Vacation Policy until Jan. 1, 2019.

As a retirement-eligible employee (age 55 with five years of service), your will be permitted to use your annual vacation total plus carry-over and grandfathered vacation less any amounts used to extend your employment ('Vacation"). However, you cannot extend employment into 2019.

If you choose not to vacation out, you will be paid your annual vacation total plus carry-over and grandfathered vacation less any amounts used in 2018 in your final paycheck.

> Q: I am not retirement eligible. How am I impacted by this change?
> A: If you continue employment for all of 2018, you are not impacted by the change. You can continue using vacation, with supervisor approval, in the same way you do currently.
>
> If your employment ends during 2018 and you are not retirement eligible (age 55 with five years of service), your final pay will include your earned vacation less any amounts used prior to your employment end date. Where administratively practicable, vacation hours used in excess of earned vacation, including carry-over and grandfathered, will be recovered from your final pay.
>
> **Example:** Jack has been with the company for seven years and is not retirement eligible. When he terminated employment on July 31 he had 80 hours of carry-over vacation.
>
> - His earned vacation is 84 hours, 70 percent of the 120-hour annual vacation total in the current year.
> - He used 40 hours of vacation prior to terminating.
> - He will receive 124 hours of pay in lieu of vacation (80 hours carry-over vacation plus 84 hours earned vacation equals 164 hours less the 40 hours of vacation used).

It is noted by the Arbitrator that the non retirement example above most accurately demonstrates the Union's contention as articulated in its grievance that its members lost their respective vacation payout on January 1, 2018.

As a comparison, under the Company's two previous vacation policies that were operative during the beginning of the 2016 Working Agreement (Joint Exhibits Nos. 8 and 9), and using the exact same example, Jack would have received 160 hours of pay in lieu of vacation instead of 124 hours. This constitutes a difference of **36** more hours of pay in lieu of vacation.

Further, if Jack had terminated his employment earlier on January 2, 2018, Jack would have received 160 hours of pay in lieu of vacation instead of 40 hours. A difference of **120** hour more hours of pay in lieu of vacation under the previous vacation polices.

Accordingly, the above two comparisons seem to support the Union's position that its members have been adversely impacted by the change in the Company's new 2018 Vacation Policy.

The Company however, in order to shore up its position, further contends that the employees have never earned their annual vacation total in the prior year and that it has always been awarded on January 1 of the current year. In essence, the Company avers that a whole year of vacation has been earned on one day, January 1st. With this however, the Arbitrator cannot agree based upon the evidence and testimony as presented by the Union, along with the well recognized concept in labor law, that the extent of vacation entitlements is governed by the collective bargaining agreement, which typically varies with length of service, and is usually earned in 1 year and received in the next.[2]

Furthermore, although the Arbitrator agrees that the Company has the right to modify its vacation policies going forward, and in this case the policy was amended midterm into the Working Agreement, it is clear that the material change in the vacation policy may have negatively affected some of the bargaining unit employees employed as of December 31, 2017.

## CONCLUSION

Based on the above findings, it is the conclusion of the Arbitrator that the affected bargaining unit employees as of December 31, 2017 be made whole for their lost, vested vacation.

---

[2] Elkouri, How Arbitration Works, Ch. 17. Employee Rights and remedies, 1. Vacations, 6th Ed. Supp.

FMCS Case No. 180531-05203
Vacation Policy
Borger, Texas – Page 12

## AWARD

For the reasons given, the grievance is sustained.

*October 18, 2019*

_____
Raymond L. Britton, Jr. Arbitrator